Grace E. Price and Marjorie E. Curry, Administrators of the Estate of Nettie Vollmer, Deceased, Petitioners-Appellants, v. Elaine Saffield, Respondent-Appellee.

## Gen. No. 11,775.

Second District, Second Division.

December 26, 1963.

Long, Jackson & Gende, all of East Moline (Durward J. Long and James J. Gende, of counsel), for appellants.

Sinnett, Rink & Coryn, all of Rock Island (James J. Coryn, John R. Coryn and Paul E. Rink, of counsel), for appellee.

SPIVEY, J.

The administrators of the Estate of Nettie Vollmer brought a citation to discover assets of the decedent. The citation was directed principally to Elaine Saffield. After extensive hearings the Probate Court of Rock Island County entered an order which in effect denied the relief sought in the citation. From this order the administrators have appealed to this court.

Nettie Vollmer resided in the home of the parents of Elaine Saffield when Mrs. Saffield was born. Miss Vollmer never married and during her lifetime she developed a close relationship with Mrs. Saffield which continued until the time of Miss Vollmer's death in October 1960. In 1934 Miss Vollmer created joint tenancies with Elaine Saffield in three savings accounts. Both Miss Vollmer and Mrs. Saffield signed signature cards for each account which provided:

"We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be our joint property and owned by us as joint tenants with rights of survivorship and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. It is specially agreed that withdrawals of funds by the survivors shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

Payment to or on check of the survivor shall be subject to the laws relating to the inheritance and succession taxes and all rules and regulations made pursuant thereto."

All funds in the accounts were contributed solely by Miss Vollmer. In the twilight of Miss Vollmer's life, Mrs. Saffield made withdrawals from the accounts to provide care for Miss Vollmer. She also deposited Miss Vollmer's checks and had custody of the pass books. In the summer of 1960 Miss Vollmer was taken to a nursing home and ultimately to the East Alton State Hospital where she passed away at age eighty-nine.

In August of 1960 and prior to the death of Miss Vollmer, Mrs. Saffield withdrew approximately $20,000 from the joint accounts (substantially all of the funds) and refused to account to the administrators after the death of Miss Vollmer. However she paid all of the expenses of the funeral of Miss Vollmer.

The evidence introduced at the hearing on the citation dealt mainly with the nature of the relationship of Miss Vollmer and Mrs. Saffield and by relatives of Miss Vollmer. There was testimony that Miss Vollmer stated on numerous occasions that she wanted Elaine to have all her property at her death and other witnesses testified that Miss Vollmer and Elaine Saffield were as mother and daughter or aunt and niece.

It was also shown that it was the practice of the financial institutions where the joint accounts were established to explain carefully the significance of establishing a joint account as compared with other types of accounts.

Miss Vollmer's closest relatives were nieces and nephews and they visited her infrequently. She was said to have stated that they visited her so infrequently "they might as well not exist."

In its order the court as a part thereof found: "That there was a preponderance of evidence of a donative intent on the part of the deceased, Nettie Vollmer, to

make a gift inter vivos to Elaine Saffield of the contents of said joint bank (sic) accounts; that there was a valid delivery of the subject of said gift to Elaine Saffield; and that said joint accounts created a joint tenancy in the bank account with the right of survivorship pursuant to Chapter 76 of the Illinois Revised Statutes."

The court then ordered, "That the funds in said joint savings accounts, and any withdrawals therefrom by Elaine Saffield, are the sole and exclusive property of said Elaine Saffield, the surviving joint tenant."

Section 2(a) of the Statute on joint rights and obligations (Ill Rev Stats, c 76, § 2(a), 1961) provides:

"When a deposit in any bank or trust company transacting business in this state has been made or shall hereafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any of said persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made."

■ The statute does more than protect the bank. It provides a method for creation of a joint account effective between the tenants only as well as between the tenants and the bank.

It is contended by the administrators that the funds withdrawn from the accounts should be repaid to the estate of Miss Vollmer, but it is conceded that all funds remaining in the accounts after the death of

Miss Vollmer belong to Elaine Saffield as a surviving joint tenant. Thus it must be petitioners' contention that a valid joint tenancy was created which gave rise to a right of survivorship, but that Elaine Saffield, as an acknowledged bona fide joint tenant had no right to withdraw funds for her own benefit.

In Frey v. Wubbena, 26 Ill2d 62, 185 NE 850, a similar contention was made. There, it was contended that the creation of joint accounts was a device for testamentary disposition but that there was a lack of donative intent so as to create valid inter vivos gifts. The court rejected the contention in that case.

"It is settled law in this state that a deposit agreement setting up a joint account with right of survivorship is presumptive evidence of a donative intent, and it is effective unless the donative intent is disproved by other evidence." In re Estate of Mueth, 33 Ill App 2d 449, 179 NE2d 695.

This court in its opinion in the case of In re Estate of Cronholm, 38 Ill App2d 141, 186 NE2d 534, stated that where the form of the applicable statutes has been complied with, evidence of donative intent to establish an inter vivos gift is not required and a valid joint account is created.

In the instant case the agreement signed by Miss Vollmer and Mrs. Saffield was in form as required by Section 2(a) of the Statute on joint rights and obligations (Ill Rev Stats c 76, § 2(a), 1961).

The administrators contend that various rights are created through the establishment of a joint tenancy account including the right of survivorship and the inter vivos right to appropriate. But they urge that the evidence fails to show any donative intent to create a present right of appropriation and so they urge that the respondent should be required to return to the estate the funds withdrawn from the accounts.

98

No doubt it is a desire to find a simple and inexpensive mode of conveyance which prompts the indiscriminate and universal use of the joint tenancy. While the device may appear to provide a quick and adequate solution to a myriad of individual problems this court and the others of our state have come to recognize the joint account as a troublesome relationship, because of a general misunderstanding existing as to the effect of the creation of the joint account and because of the previous attempts of courts to fit joint accounts into previously fixed rules applied to other property concepts.

But now, much of the confusion formerly existing has been swept away by the Supreme Court in the case of Frey v. Wubbena, 26 Ill2d 62, 185 NE2d 850. In that case, the decedent created joint accounts with his daughters as authorized by Section 2(a) of the Statute on joint rights and obligations (Ill Rev Stats, c 76, § 2(a), 1961). The court said, "Joint tenancy in such an unstable atmosphere as a shifting bank account should be created by contract of the parties detailing their rights and duties under statutory authority. . . . What we have said with respect to creation of joint tenancies in intangible personal property in the language of the statutes amounts to a holding that legal (as differentiated from equitable) *title is vested in the holders* with right of survivorship by force of the statutes and compliance with the appropriate statutory requirements dispenses with the necessity of applying common-law principles governing creation of joint tenancies." (Emphasis ours.)

We do not interpret the language to mean that only a right of survivorship was created but rather that all legal incidents were vested in each tenant. In the instant case the joint accounts were established in the manner authorized by statutes. Following the lan-

guage of the Frey case, when the accounts were created, legal title with all incidents of true ownership was then vested in both the joint tenants including a right of survivorship.

There is nothing in the language of the Frey case or in the contract of the joint tenants which would cause us to conclude that the title vested in the joint tenants did not include the right to appropriate any or all of the account at any time after the creation of the account. To the contrary, the language of the parties clearly indicates that such was their desire and understanding.

Law is dynamic and concepts change with the reasons and needs of the people. The legislature has recognized the difficulty of the courts in dealing with joint accounts and has by statute provided a means by which uniformity and stability may be accomplished for the advantage of all. Thus we recognize and give meaning to the contract executed by the joint tenants. "Public policy would seem to require the adoption by the courts of a more liberal and practical view of these common transactions." Frey v. Wubbena, 26 Ill2d 62, 185 NE2d 825.

■ When the parties have by contract, in a manner as provided by statute, created a joint tenancy, then either party to the agreement may enjoy all of the benefits of the agreement in addition to the right of survivorship. The burden is placed upon he who would seek to limit the rights of either tenant as created by the contract to show that the equitable title is not vested in the parties to the contract.

■ In the instant case there was an attempt to make a showing that the equitable title was in Nettie Vollmer. The trial court found that the administrators failed in their proof. We cannot weigh the evidence but must affirm the trial court's findings of fact unless it is against the manifest weight of the evidence. There

100

is much credible evidence to support to findings of the trial court.

It is the opinion of this court that the judgment of the Probate Court of Rock Island should be affirmed.

Judgment affirmed.

CROW, P. J. and WRIGHT, J., concur.