**In the Matter of the Estate of George William Morey, Deceased.**
**Forrest L. Morey, Administrator of the Estate of George William Morey, Deceased, Plaintiff-Appellant, v. Mary O'Brien and Villa Grove Building and Loan Association of Villa Grove, Illinois, a Corporation, Defendants-Appellees.**

**Gen. No. 10,767.**

Fourth District.

December 22, 1966.

Rehearing denied and opinion modified February 28, 1967.

Williams & Resch, of Casey, for appellant.

Lemna & Lee, of Tuscola, for Mary O'Brien, appellee.

TRAPP, J.

Plaintiff, Forrest L. Morey, Administrator of the estate of George William Morey, appeals from a judgment of the Circuit Court of the Sixth Judicial Circuit, Douglas County, Illinois, holding that the defendant, Mary O'Brien, is the owner of Certificate No. 2352 issued by the Villa Grove Building and Loan Association, representing 50 fully paid shares in said Association.

■■■■■■■

George W. Morey, now deceased, purchased 50 installment shares in the Association, and the Association originally issued Certificate No. 2175 representing the shares. On July 2, 1958, Certificate No. 2175 was surrendered and Certificate No. 2276 was issued. George W. Henson, Vice-President of the Association, testified that on September 17, 1962, Mr. Morey paid the remaining balance due on the fifty shares, endorsed and surrendered Certificate No. 2276 and requested the reissuance of the certificate, stating that he would like to have it made out to "George W. Morey or Mary O'Brien or survivor." Donald E. Ryan made out the new certificate as directed, bearing Certificate No. 2352, and delivered it to Mr. Morey in exchange for Certificate No. 2276, which Mr. Morey endorsed. Mr. Morey stated, at the time, that Mary O'Brien was the only one that was good to him.

The face of the certificate was as follows:

"Number 2352
Class A

"CERTIFICATE OF INSTALLMENT SHARES OF VILLA GROVE BUILDING AND LOAN ASSOCIATION, VILLA GROVE, ILLINOIS

"This Certifies that George W. Morey or Mary O'Brien or survivor member(s) of this association (is) (are) the owner(s) of 50 Installment Shares upon which the initial payment of dues per share has been made.

"The shares participate in the net earnings of the association such earnings to be apportioned periodically as the by-laws may provide. Dues payments are 60 cents per share each month and shall continue until the total dues paid in and all profits so apportioned aggregate the matured value of One Hundred Dollars per share.

"Shares represented by this certificate are subject to 'Conditions' on reverse side hereof and are transferable only on the books of the association by the holder in person or by attorney upon surrender of the certificate properly indorsed.

"In Witness Whereof, The association has caused this certificate to be signed by its duly authorized officers this 17th day of September, A. D. 1962.

(SEAL)

/s/ D. E. RYAN /s/ J. R. HENSON
Secretary V. President"

Included in the conditions on the reverse side is the following:

"Second. The association may enforce retirement of shares in the manner provided by law. Shares may be withdrawn by the owner subject to such notice as may be required by the by-laws. Application to withdraw before the shares have reached matured value will be filed in the order in which they are received. Maturing shares are automatically filed as of the date of maturity. Payments will be made in the order filed from appropriations made by the directors out of the regular receipts of the association—except that in the event of unusual demands they may be paid, as·provided by the laws of Illinois, in such other manner as the Board of Directors may from time to time by resolution determine."

The only passbook issued was a payment record showing installments paid. It was not required that the payer bring in his passbook.

Mr. Ryan testified that at the time the Certificate in question was issued, the Association had full paid shares and installment shares. These were represented by

certificates. The Association also had withdrawable capital accounts which were represented by passbooks and account numbers. He stated that the Certificate, in the case of installment shares, was the only document which showed the owners of the shares, and that it was transferable only on the books of the Association. He stated that the Certificate representing installment shares was never referred to as a withdrawable capital account.

Mr. Henson, Vice-President, testified that a signature card was not required with installment shares, that if Mr. George W. Morey had brought the Certificate No. 2352 in, he could have exchanged it for $5,000. He stated that if Mary O'Brien had brought the Certificate in, she could have exchanged it for $5,000. He also stated that the installment shares are now obsolete.

It is agreed that there was no contract signed by George W. Morey and Mary O'Brien creating a joint tenancy or making any other disposition of the shares, nor was any signature card obtained from Mary O'Brien.

Plaintiff contends that Illinois Revised Statutes, 1961, chap 76, § 2 (c) and chap 32, § 770 require that to establish a joint tenancy in respect to the shares here involved, there must be a writing or agreement signed by both joint tenants expressing the agreement that payment may be made to the survivor.

Defendant's brief relies upon chap 32, § 952 and chap 76, § 2 (b) and § 2 (c) (Ill Rev Stats, 1961).

The Supreme Court of Illinois in Frey v. Wubbena, 26 Ill2d 62 on 67–68, 185 NE2d 850, adhered to the doctrine announced in Doubler v. Doubler, 412 Ill 597, 107 NE2d 789, that in the case of a bank account it was necessary that an agreement be signed by the parties in order to create rights of survivorship in a bank deposit. The court also determined that the right to create a survivorship account in respect to savings and loan associations was provided by both the statute relating to joint rights and obligations, and the Illinois Savings and Loan Act.

It further held that the right to create a joint tenancy in corporate stock is recognized by the statute on joint rights and obligations, chap 76, § 2(b) (Ill Rev Stats, 1961). In respect to corporate stock, the court held that the registration of the stock ownership upon the books of the corporation in the statutory language was sufficient to vest the title. The court distinguished corporate stock from bank accounts upon the difference in the statute and the difference in the nature of the property. Section 2(b) of chap 76 (Ill Rev Stats, 1961) does not require a writing as to corporate stock. The court explained that corporate stock was issued in fixed units of ownership (shares of stock) which remain fixed, whereas, a bank account is a fluctuating res subject to daily change in amount by the act of any of the joint owners. Even if one assumes that the certificate for shares had not been fully paid, it was a certificate for a fixed number of shares transferable *by its terms,* only on the books of the corporation and upon surrender of the certificate. It is clear that the ownership of the shares was to be fixed by corporate registration and not by other agreements. The registration of shares of corporate stock in joint tenancy by oral request for registration is supported by Lytle v. Northern Trust Co., 39 Ill App2d 372, 188 NE2d 743.

█ It is our view that the shares of stock represented by the certificate, at least when matured as they were at the time of the issuance of Certificate No. 2352, fall into the category of corporate stock and not into the category of a bank account. Both the form of the certificate and the testimony of the officers of the association bear witness to the fact that the shares in question do not represent a withdrawable capital account.

█ There remains the question that the registration of the stock was not in the exact statutory language in that the term "as joint tenants" was not used. That there was a donative intent as opposed to providing a

convenience account seems clear both from the nature of the registration and the testimony of Mr. Henson as to Mr. Morey's statements at the time of registration. In Reder v. Reder, 312 Ill 209, on p 213, 143 NE 418, langauge putting an account in the name of the depositor and another "payable to either or the survivor of them" was considered sufficient to create a joint bank account where both had possession of the book from time to time. While the Reder case would not be authority for creation of a joint account today without an agreement between the parties, it does clearly indicate that the use of the specific words "as joint tenants" is not necessary to create an effective gift which results in the survivor taking.

 We believe that Frey v. Wubbena, 26 Ill2d 62, 69, 185 NE2d 850, must be taken as holding that where the personal property is evidenced by a certificate of ownership of a fixed number of units or shares in a corporation or association, which certificate of ownership is registered upon the books of the corporation or association and is by its terms transferable only upon the books of the corporation upon surrender of the certificate, a joint tenancy may be created by the act of registration on the corporate books and the issuance of a certificate using apt language to describe a joint tenancy; under the authority of chap 76, § 2 (Ill Rev Stats, 1961). This could be done either under the authority of the first paragraph of this section as an exception to the section or under § 2(b) of chap 76. Such a method of creation of a joint tenancy need not be accompanied by an agreement signed by either of the parties to the joint tenancy.

 Our analysis of Frey v. Wubbena leads us to the conclusion that the Supreme Court, in that case, made an exception of those cases where the shares of stock or indebtedness were evidenced by a certificate, and where the normal method of transferring ownership required the transfer or surrender of the certificate. In the case of

shares of stock in a corporation, a joint tenancy can be created by surrender of an existing share of stock by the person entitled to surrender the same, and the registration of the stock upon the books of the corporation in language appropriate to create a joint tenancy. In the case of certificates of deposit and promissory notes, the court there held that this can be done by the act of the person issuing the certificate of deposit or making the note.

The certificate of shares of stock in the Villa Grove Building and Loan Association, in this case, was a reissuance of a certificate originally issued in 1952, prior to the enactment of Illinois Savings and Loan Act of 1955. No proper question is presented in this case whether the association issued these shares under a proper plan approved by the auditor. They were, in fact, treated by all parties as shares of corporate stock, and the manifest intention of the owner to create a joint tenancy with right of survivorship was carried out by the corporation in the usual manner for creating joint tenancies in such property.

The type of certificate involved in this case which was transferable only on the books of the corporation was of the same nature as the type of certificate involved in Allmon v. Salem Building & Loan Ass'n, 275 Ill 336, 341, 114 NE 170, where the association was held to be negligent in paying the registered owner without requiring a surrender of the certificate. This, we believe, reinforces our view that the property here involved should be treated as corporate stock rather than as a bank account or withdrawable account, and should be transferable as provided in chap 76, § 2(b) (Ill Rev Stats, 1961), without a signed agreement between the parties.

The judgment of the Circuit Court is affirmed.

Affirmed.

CRAVEN, P. J. and SMITH, J., concur.