(No. 40577.—

*In re* ESTATE OF GEORGE WILLIAM MOREY—(FORREST L. MOREY, Admr., Appellant, *vs.* MARY O'BRIEN *et al.*, Appellees.)

*Opinion filed Nov. 30, 1967.—Rehearing denied Jan. 18, 1968.*

WILLIAMS AND RESCH, of Casey, for appellant.

LEMNA & LEE, of Tuscola, for appellees.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff initiated this action in the probate division of the circuit court of Douglas County by a petition for citation to discover assets of the estate of the decedent, George Morey. The purpose of the action was to determine the ownership of a share certificate of the Villa Grove Building and Loan Association representing 50 installment shares, having a matured value of $100 each, issued in the name of "George W. Morey or Mary O'Brien or Survivor," which was paid for by decedent and found among his personal effects. The administrator-plaintiff claimed the proceeds of the account for the estate on the basis that there was no joint ownership and right of survivorship in Mary O'Brien since no written agreement was executed by the registered owners. Villa Grove Building and Loan Association filed a petition of interpleader asking for declaratory relief to determine the interests of possible claimants to the property represented by the certificate. Mary O'Brien, one of the interpleaded parties and a claimant, maintained that the certificate represented shares of stock in which the right of survivorship was created by registration of the stock on the association's books in the names of the joint tenants or survivor. After a hearing, the trial court found Mary O'Brien

to be the owner of the 50 shares by right of survivorship.

The Appellate Court, Fourth District, affirmed (79 Ill. App. 2d 257) and we granted leave to appeal.

The facts pertinent to this appeal are as follows: On September 6, 1952, Villa Grove Building and Loan Association issued share certificate No. 2175 representing 50 installment shares to George Morey in the following form: 'George W. Morey or Cleo Morey or Barbara Lee Baker, or survivor." On July 2, 1958, George Morey endorsed and surrendered certificate No. 2175 to the association which in turn issued certificate No. 2276 also representing 50 installment shares in a new form, to-wit: "George W. Morey or Jeanie McCollom or Judy McCollom, or survivors." Then, on September 17, 1962, George Morey endorsed and surrendered certificate No. 2276 to the association which issued the certificate in question, No. 2352, designating the owners as "George W. Morey or Mary O'Brien, or survivor." The form of this certificate is set out in *extenso* in the appellate court opinion (79 Ill. App. 2d at 259-260) and we need not reproduce it here. For the certificate holder's convenience, a passbook was issued to reflect installments paid, the last payment apparently being made between the certificate's date of issuance and the decedent's death in October, 1962.

The parties other than the plaintiff, the association, and Mary O'Brien were defaulted for failure to appear. The testimony disclosed that all the transfers of the certificates were carried out on the books of the association in customary manner without requiring any written agreement to create a joint tenancy with right of survivorship. Specifically, the testimony of the association officers and employees was that at the time the certificates were issued, association capital included both fully paid and installment shares which were represented by share certificates, that the withdrawable capital accounts of the association were represented by passbooks, and that consequently the installment shares in question were never referred to as withdrawable

accounts and were transferable only on the books of the association. An officer further testified that, had either decedent or Mary O'Brien surrendered the certificate to the association, he or she would have received the cash value of the shares at the time of surrender.

The sole issue presented in this court, as below, is whether the registration of the certificate on the books of the association in the form described was sufficient to vest title in Mary O'Brien with right of survivorship. Necessary to resolution of this issue is the determination of the nature of the certificate since under the Joint Rights and Obligations Act (Ill. Rev. Stat. 1961, chap. 76, par. 2(b)) and other relevant statutory authority, specifically, the Illinois Savings and Loan Act (Ill. Rev. Stat. 1961, chap. 32, pars. 701 *et seq.*), the procedures prescribed for creating joint tenancies differ with the nature of the personalty. For example, to create joint rights in a bank account it is necessary to execute a written agreement to that effect signed by the parties (*Doubler* v. *Doubler,* 412 Ill. 597), whereas in the case of corporate stock registration of ownership on the corporation books in appropriate statutory language is sufficient. (*Frey* v. *Wubbena,* 26 Ill.2d 62, 69.) It was in view of this latter holding, that the appellate court resolved the issue in favor of Mary O'Brien, since it found, from an examination of the certificate and the testimony of the association officers concerning what they intended the certificate to represent, that "the shares of stock represented by the Certificate, at least when matured, as they were at the time of issuance of Certificate No. 2352, fall into the category of corporate stock and not into the category of a bank account."

While the record tends to support this finding, since the parties evidently regarded the certificate as similar to a share of corporate stock, we hold that the intent of the parties is not the only determining factor for the reason that all the rights and duties of the association, including the

types of shares it may issue and the procedure for creating joint rights therein, were and are controlled by the Illinois Savings and Loan Act. See Ill. Rev. Stat. 1961, chap. 32, pars. 703, 704.

Section 4—1(a) of that Act, in pertinent part, provides: "The capital of an association may be represented by withdrawable capital accounts (shares and share accounts) or permanent reserve shares or both, as provided in this article and as authorized by the articles of incorporation." (Ill. Rev. Stat. 1961, chap. 32, par. 761(a).) These categories are exclusive as no authorization is made anywhere in the Act for the issuance of any other type of account.

Section 4—2 (par. 762) defines "Withdrawable capital accounts" prescribing that such accounts are entitled to dividends, are nonassessable for either debts or losses of the association and must be issued according to plan, including a "(1) Regular installment plan: agreed weekly or monthly payments, with dividends credited to or in behalf of the account until the ultimate value agreed upon in the subscription is reached." (Ill. Rev. Stat. 1961, chap. 32, par. 762(d)(1).) Section 4—8 sheds further light on the nature of a withdrawable capital account as it provides that such accounts be evidenced by one or more certificates and/or a passbook delivered to the holder, and that these evidences of membership are nonnegotiable and, unlike permanent reserve shares, not subject to article 8 of the Uniform Commercial Code concerning investment securities. (Ill. Rev. Stat. 1961, chap. 26, par. 8—101 et seq.) Regarding the nature of permanent reserve shares, section 4—3 of the Illinois Savings and Loan Act provides that they are nonwithdrawable, with certain exceptions, until all other liabilities of the association, including payment of withdrawable capital accounts, have been satisfied, and that they may issue only upon full cash payment of not less than their par value.

When the characteristics of the instant certificate are

examined in light of these statutory provisions, it is manifest that this certificate represents a withdrawable capital account of the Villa Grove Building and Loan Association. Moreover, aside from the dictates of these provisions, which we find controlling, there are important factual distinctions between this certificate and a share of corporate stock which mitigate against treating them alike. Whereas a share of corporate stock may not be issued until consideration in the amount of its par or stated value is received (Ill. Rev. Stat. 1961, chap. 32, par. 157.17), the instant certificate could be and was issued with payment of its matured value to be made by installments and the crediting of association dividends. In addition, all or part of the capital paid in for the certificate was withdrawable at will before or after full payment of the matured value of the share. These factors unquestionably indicate that the certificate cannot properly be considered in the category of a corporate stock and substantiate our conclusion, based on the statutory provisions, that the certificate represents a withdrawable capital account. As such, section 4—10 of the Illinois Savings and Loan Act sets forth the applicable procedure for the creation of a right of survivorship in this type of capital account, and makes the signing of an agreement among the parties mandatory. (*Frey* v. *Wubbena,* 26 Ill.2d 62, 68.) Since no such agreement was executed here, we hold that no joint tenancy with right of survivorship was created in the certificate.

As Mary O'Brien advances no other theory to support her claim to ownership of the certificate, the fifty shares in the association represented by the certificate belong to the estate claiming it. (See *Doubler* v. *Doubler.*) Therefore, the judgments of the trial and appellate court are reversed and the cause is remanded to the circuit court of Douglas County with directions to enter an order consistent with this opinion.

*Reversed and remanded, with directions.*